```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

RALPH E. REPASS,

    Plaintiff,

v.                                      CIVIL ACTION No. 1:08-0947

NORTHWESTERN MUTUAL LIFE
INSURANCE CO.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court are the parties' cross motions for summary judgment (docs. 31 and 33). For the reasons set forth more fully below, plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**.

### Factual Background

This civil action was originally filed in the Circuit Court of Mercer County, West Virginia, on February 28, 2008. According to the allegations in the amended complaint, in 1988, plaintiff, Ralph Repass, purchased a disability insurance policy from defendant Northwestern Mutual Life Insurance Co. ("Northwestern") through Sandra Goodwin, an agent for Northwestern. On December 28, 1988, Northwestern issued Disability Income Policy No. D646487 to plaintiff. According to the amended complaint, plaintiff injured his back in 1991, and his injury grew worse in 2000. In June 2002, plaintiff filed a claim for partial disability benefits with Northwestern. The

Policy provided coverage to Repass through age 65 or, more specifically, to the Policy anniversary date immediately following the insured's 65th birthday, i.e., December 28, 2005. He was paid partial disability benefits until December 28, 2005.

The Policy also contained a provision for lifetime benefits for total disability.  According to the policy, in order to qualify for lifetime total disability benefits, Mr. Repass must have been totally disabled on or before the Policy anniversary that immediately follows his 60th birthday, i.e., December 28, 2000, and he must have continuously maintained such disability through the Policy anniversary that immediately follows his 65th birthday, i.e., December 28, 2005.  Repass inquired as to his eligibility to receive lifetime benefits and Northwestern contended that he was not eligible because he was not totally disabled.  It is this denial of benefits that serves as the basis for plaintiff's breach of contract claim.

## **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-51.

## **Analysis**

According to the Policy, plaintiff was eligible for a lifetime benefit for total disability if he was "totally disabled

on the policy anniversary that follows his 60th birthday; and the total disability continues beyond the policy anniversary that follows his 65th birthday." Exhibit A to Defendant's Motion for Summary Judgment, p.7. The policy anniversary following plaintiff's 60th birthday was December 28, 2000, and the policy anniversary following his 65th birthday was December 28, 2005. Accordingly, to prove entitlement to lifetime benefits, Repass was required to show that he was totally disabled as of December 28, 2000, and that said disability continued through December 28, 2005. Northwestern contends that plaintiff cannot show that he was totally disabled on December 28, 2000, and, therefore, he is not eligible for lifetime benefits.

For purposes of the Initial Period, the Policy provides that an insured is totally disabled "when he is unable to perform the principal duties of his occupation." Id. at p.5.[1] The Policy further provides that an insured is partially disabled when "he is unable to perform one or more of the principal duties of his occupation or to spend as much time at his occupation as he did before the disability started." Id. Northwestern

---

[1] After the first year of total disability, an individual is considered to maintain his total disability if he "is unable to perform the principal duties of his occupation and is not gainfully employed in any occupation." Id. According to Northwestern, because Repass never showed that he was totally disabled during the Initial Period, it is unnecessary to determine whether he was totally disabled beyond that date. The court agrees.

4

contends that these provisions, when read together, establish that Repass was only partially disabled if he could perform any of the principal duties of his occupation.  In other words, according to Northwestern, plaintiff must have been unable to perform any of the principal duties of his occupation to qualify for lifetime total disability benefits under the Policy - - the ability to perform even one principal duty would foreclose a finding of total disability.

Plaintiff contends that the failure of the Policy to define "principal duties of his occupation" renders the policy ambiguous.  Plaintiff also argues that Northwestern had in its possession medical evidence dating back to 2000 which showed that plaintiff was totally disabled in 2000.  The medical evidence, however, is irrelevant to the court's analysis herein because, in determining disability, the Policy focuses on the activities of the insured and not what the medical evidence reveals about an insured's physical or mental condition.

I.   Total Disability v. Partial Disability

Dispositive to the motions for summary judgment is the interplay between the terms "total disability" and "partial disability."[2]  There is no West Virginia case addressing this

---

[2] Northwestern attaches great significance to the fact that plaintiff filed a claim for partial disability benefits and continued to assert that he was partially disabled in his various continuation claims.  In his deposition, plaintiff elaborated on the information supplied in his various claims and cast some

5

specific issue, however, the case of <u>Berenguer v. Lincoln National Life Ins. Co.</u>, 2006 WL 3327643 (E.D. Va. 2006), is instructive. The <u>Berenguer</u> court noted that courts confronting this issue have taken one of two approaches:

> Plaintiff urges the Court to apply cases which conclude that the definitions of "Total Disability" and "Residual Disability"[3] are ambiguous, and further that an insured can be totally disabled despite being able to perform one or more substantial and material duties." <u>Giddens v. The Equitable Life Assurance Soc'y of the United States</u>, 445 F.3d 1286, 1297 (11th Cir. 2006) (holding that, under Georgia law, insured was totally disabled based upon inability to perform "most or the majority" of his substantial and material duties); <u>Dowdle v. Nat. Life Ins. Co.</u>, 407 F.3d 967 (8th Cir. 2005). Berenguer argues (1) that in order to be totally disabled he need not prove that he is unable to perform <u>all</u> of the duties of his occupation, but only the "substantial and material" duties "necessary to be reasonably expected to carry on that occupation," . . . (2) that the Policy is ambiguous because the definition of total disability is completely subsumed by the definition of residual disability, and therefore should be construed such that Berenguer is totally disabled, and (3) that he is totally disabled because MetLife admitted as much in

---

doubt on his understanding regarding when and how he should fill out his claims. For this reason and for purposes of summary judgment, the court has not taken the information provided in the various requests for benefits on their face but, rather, has considered them as more fully discussed in plaintiff's deposition.

[3] In <u>Berenguer</u>, the operative policy defined "Total Disability" as the inability to "perform the substantial and material duties of Your occupation." "Residual Disability" was defined as the inability to "perform one or more of the substantial and material duties of Your occupation." <u>Berenguer</u>, 2006 WL 3327643, at *15.

6

> conceding that he cannot perform[ ] obstetrics and gynecological surgery.
>
> Lincoln National asks the Court to follow the line of cases holding that in order to recover total disability benefits, an insured is "obligated to show that his disability prevented him from performing all of those duties, not just some of them." McCosker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 (8th Cir. 2002) (finding this construction to be "the only one that comports with both reason and authority"). See Conway v. Paul Revere Life Ins. Co., No: 5:99CV150-T, 2002 WL 31770489, *9 (W.D.N.C. 2002), aff'd, 70 F. App'x. 117, 2003 WL 21730096 (4th Cir. 2003); Yahiro v. Nw. Mut. Life Ins. Co., 168 F. Supp.2d 511 (D. Md. 2001); Dym v. Provident Life & Accident Ins. Co., 19 F. Supp.2d 1147 (S.D. Cal. 1998). See also Giampa v. Trustmark Ins. Co., 73 F. Supp.2d 22, 27-29 (D. Mass. 1999) (surveying cases). Lincoln National argues that Berenguer's ability to perform at least one of his substantial and material duties necessarily means that he is not unable to perform "the" substantial and material duties of his occupation- and is thus not totally disabled as the Policy defines the term.

Id. at * 15 (internal footnotes omitted). In finding the position of the insurer to be the better reasoned approach, the court in Conway v. Paul Revere Life Ins. Co., concluded "[i]t is evident [] that a person who can perform some but not all of his or her important duties has a `Residual Disability' within the meaning of the policy, and that therefore in order to be eligible for total disability payments a person would be required to show that he or she was unable to perform any of those important duties . . . . [I]t is not otherwise possible to give effect to both parts of the contract." 2002 WL 31770489, * 9 (W.D.N.C.

2002), aff'd, 70 F. App'x. 117, 2003 WL 21730096 (4th Cir. 2003) (quoting McCosker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 (8th Cir. 1988)); see also Provident Life and Accident Ins. Co, v. Cohen, 193 F. Supp.2d 845, 850 (D. Md. 2002) ("This view of the term `Total Disability' is incorrect because it ignores the `Residual Disability' term in the insurance contract."); Simon v. Unum Group, 2009 WL 857635, *5 (S.D.N.Y. 2009) ("When the policy is read as a whole, it can only be interpreted in one way.  If the residual disability provision is to be given meaning, an insured can only be `totally disabled' if he can no longer perform any of the `substantial and material duties' of his occupation.").

The other line of cases allows an insured to establish total disability if "he is unable to perform most or the vast majority of the substantial and material duties of his occupation."  Giddens v. Equitable Life Ass. Society, 445 F.3d 1286, 1298 (11th Cir. 2006); see also Dowdle v. Nat'l Life Ins. Co., 407 F.3d 967, 970 (8th Cir. 2005) (policy defining total disability as inability "to perform the material and substantial duties of an occupation" and concluding that ambiguity existed because "[t]he policies' definitions of `total disability' are susceptible to differing interpretations, because the policies do not speak in terms of `any,' `all,' `some,' or `the most important part' of [the insured's] duties").

Consistent with the Conway line of cases, this court agrees that the Policy language is unambiguous.[4] However, as in Berenguer, this court is not required to choose among the different approaches because even under the more favorable Giddens standard, plaintiff still cannot show he was totally disabled under the terms of the Policy at the critical time.

II. Principal Duties of Repass' Occupation

Plaintiff served as the President and General Manager of St. Clair Foods Distribution Corporation. Repass Depo., February 24, 2009, at 17 (hereinafter "Repass Depo. at ____"). According to plaintiff, St. Clair Foods was a specialty foods distributor. Id. at 17-18. No job description for plaintiff's position existed. However, plaintiff prepared a list of his duties as President and CEO of St. Clair Foods. Id. at 58-61. The list consists of 28 duties[5] and was prepared to demonstrate the duties Repass performed before the year 2000, prior to his injury. Id. Mr. Repass testified about this list extensively during his deposition and he indicated which of the duties he performed

---

[4] Having concluded that the language of the insurance policy is unambiguous, the court rejects plaintiff's argument that the doctrine of reasonable expectations applies. See Parker v. State Farm Mut. Auto. Ins. Co., 2009 WL 3644016 (The doctrine of reasonable expectations applies only where policy language is ambiguous.).

[5] The list states that there were 29 duties but item number 1 simply lists Repass' Title as President and CEO and does not contain any specific duties.

after his back was injured or would have been able to perform after his injury.[6]

    A.   *Duties Plaintiff Continued to Perform After December 28, 2000, or Would Have Physically Been Able to Perform After that Date.*

Of plaintiff's 28 enumerated job duties with St. Clair Foods, he stated that he did or could have continued to perform twelve of them after December 28, 2000. According to his own testimony, Repass continued or could have continued:

1. Hiring and supervising all office, kitchen, and candy packaging personnel until mid-2002. Id. at 61.

2. Hiring and interviewing sales personnel. Although Repass testified at this deposition that he did not perform this function after May 2000, he conceded that this was more a function of the winding down of the business. Id. at 61-62. He further stated that he would have been able to interview sales personnel after May 2000, had it been necessary to do so. Id.

3. Selecting items for production and retail menu for distribution on salad and candy lines until June of 2002. Id. at 65.

4. Approving and signing weekly payroll until June 2002. Id. at 66.

5. Approving and signing checks for accounts payable until June 2002. Id.

---

[6] In late 2000, plaintiff decided to close St. Clair Foods. St. Clair was ultimately closed in mid-2002. Certain duties that plaintiff performed prior to his injury in 2000, were not performed because of the winding down of the business. The corporation was eventually dissolved with the state in mid-2005. Repass Depo. at 61.

10

6. Working with banks to negotiate all loans and lines of credit. According to plaintiff, this duty was not required after 2000 but he admitted he could have performed it in 2002. Id. at 67.

7. Working with CPAs on filings and payment of taxes. Plaintiff stated that he performed part of this duty until 2002. Id. at 68. He further testified that he was capable of performing it in its entirety after 2000, but that it was not necessary because of the business winding down. Id. at 68-69.

8. Working with attorneys concerning legal matters until 2005. Id. at 75.

9. Working with insurance companies to purchase insurance for health, buildings, and vehicles. Plaintiff last performed this function in late 2001 or early 2002, although he took care of it by telephone rather than visiting the agent as he had done in the past. Id. at 75-77.

10. Determining price changes on items sold until June 2002. Id. at 67.

11. Making bank deposits until 2002. Id. at 77.

12. Picking up mail from Post Office until 2002. Id.

Based solely on the foregoing testimony regarding duties he continued to perform on behalf of St. Clair Foods, it is clear that plaintiff was not unable to perform most or the vast majority of the principal duties of his occupation.

    B. *Duties Plaintiff Continued to Perform In Part or with Modifications After December 28, 2000, or Would Have Physically Been Able to Perform After that Date.*

Of the 28 duties Repass listed, he also testified that he continued to perform seven of them to a limited degree or in a modified fashion. These duties included: 1) inventory

11

purchasing; lining out holiday merchandise; working with USDA, FDA, State, and County inspectors; scheduling loading and unloading of trucks and assigning drivers; arranging maintenance of cars and trucks and scheduling all repairs; scheduling repairs and maintenance for all buildings; and working with brokers selling St. Clair products.

According to plaintiff, inventory purchasing required physically going to the warehouse area, counting, restacking product by hand, climbing shelves, lifting product, and rotating inventory. Plaintiff testified that he would have been able to purchase inventory after 2000, but that St. Clair Foods was not buying further inventory but trying to dispose of existing supplies. Id. at 62-64. He admitted that he had done limited ordering in 2001. Id. at 134-35. He also testified that he would have been unable to do the other functions listed, such as climbing and rotating inventory. Id. at 63.

As to lining out holiday merchandise, plaintiff stated that this duty required him "to drive long distances to larger cities [and] stay overnight to work shows. I had to stand and walk for long hours visiting booths of manufacturers and meet with their sales people to purchase this product. Had to carry samples and sales material for these items back to our warehouse." Id. at 64. Plaintiff acknowledged that he could and

did order holiday merchandise in 2001, but not the other aspects of that duty. Id. at 64-65.

According to plaintiff, plaintiff continued to work with the various inspectors until June of 2002, but that he met with them at St. Clair Foods, rather than traveling to meet them as he had done prior to 2000. Id. at 65-66. Similarly, plaintiff continued to meet with brokers at his office until mid-2002 although he did not travel to shows. Id. at 66-67.

Repass continued to schedule trucks until 2002 but he was unable to assist with the loading and unloading of the trucks himself. Id. at 69-70. As to arranging maintenance of cars and trucks and scheduling repairs, plaintiff testified that part of this duty "required being under vehicles, climbing on top of trucks for inspection for repairs of refrigeration equipt., some physical effort required to help in repairs." Although plaintiff did not do any climbing himself, he scheduled repairs into 2001. Id. at 70-71. Concerning building repair and maintenance, plaintiff conceded that he would have been able to handle the scheduling of repairs and maintenance after April of 2002 but that none was necessary. Id. at 71. He would, however, have been unable to work on repairs himself because of the climbing involved. Id.

    C.    *Duties Plaintiff Did Not and Could Perform After December 28, 2000.*

Plaintiff testified regarding nine duties which he had been able to perform prior to his injury in 2000, but was unable to perform thereafter. These duties included:

1. Taking physical inventory two time a year. <u>Id.</u> at 70.

2. Mowing the lawn. <u>Id.</u> at 71-72.

3. Plowing Snow. <u>Id.</u> at 72.

4. Attending candy shows to purchase product for resale. <u>Id.</u>

5. Attending shows to display St. Clair products to distributors and wholesales. <u>Id.</u> at 73.

6. Making headquarter calls to retail chains. <u>Id.</u> at 73-74.

7. Traveling to Puerto Rico to visit a wholesale distributor. Plaintiff testified that he had traveled to Puerto Rico twice in the early to mid 1990's. <u>Id.</u> at 77-78. However, because of his injury, he would have been unable to do so after 2000 if the need had arisen. <u>Id.</u> at 74-75.

8. Purchasing production equipment for salad and candy lines. After his injury in 2000, plaintiff did not perform this function as it was unnecessary for business reasons. <u>Id.</u> at 75. Had it been necessary, however, he could not have undertaken it because of the travel involved. <u>Id.</u>

9. Doing supermarket resets. <u>Id.</u> at 77.

These limitations clearly established that plaintiff was partially disabled under the terms of the Policy. However, despite his inability to perform the aforementioned nine duties, plaintiff was still able to perform most of the principal duties of his occupation. Therefore, as a matter of law, Repass was not

totally disabled because he could perform not only some, but a majority, of the principal duties of his occupation.

## Conclusion

Based on the foregoing, the court concludes that Northwestern was not in breach of contract in denying Repass lifetime total disability benefits. Therefore, plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO **ORDERED** this the 18th day of November, 2009.

ENTER:

_David A. Faber_
David A. Faber
Senior United States District Judge

15